IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02694-STV

SARA BRUBAKER and DALE BRUBAKER,

   Plaintiffs,

v.

MEGAN A. RING, Colorado State Public Defender, in her individual capacity, and KATHARINE HAY, Deputy Colorado State Public Defender, in her individual capacity,

   Defendants.

---

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendants Megan A. Ring and Katharine Hay, through the Office of the Colorado Attorney General, and the undersigned Assistant Attorneys General, move to dismiss Plaintiffs' Second Amended Complaint (the "Complaint") under Fed. R. Civ. P. 12(b)(1) and 12(b)(6):

### INTRODUCTION

Plaintiffs Sara and Dale Brubaker[1] were charged with felonies in Larimer County, Colorado. Plaintiffs are represented by private counsel in their criminal matters in Larimer County. Plaintiffs are also represented by private counsel here.

---

[1] Plaintiffs sought, and this Court ordered, appointment of a representative for purposes of this litigation because Plaintiffs were deemed incompetent in their underlying criminal cases. [Docs. 61, 62]. Plaintiffs have failed to substitute their

In early 2021, Plaintiffs applied for court-appointed counsel in their criminal matters. In reviewing Plaintiffs' applications, the Office of the Colorado State Public Defender made an initial determination that Plaintiffs were not indigent and thus not eligible for court-appointed counsel. Through private counsel, Plaintiffs then sought review of the initial determination with the Larimer County District Court (the state criminal court). On April 29, 2021, pursuant to Colo. Rev. Stat. § 21-1-103(3), the state criminal court held a hearing in which Judge Laurie K. Dean reviewed the Plaintiffs' application for court appointed counsel, "as well as the supporting income documentation filed by" Plaintiffs in their respective criminal cases. On May 3, 2021, the state criminal court entered an "Order Denying Request for Court Appointed Counsel." That order concluded: "based on a totality of the circumstances, the [Plaintiffs] are not indigent such that the Court may appoint the public defender and alternative defense counsel to represent them." Plaintiffs now allege Defendants' actions violated their constitutional rights.

Despite reformulating their operative complaint twice, Plaintiffs' present Complaint is still fatally defective, and this Court should dismiss it for two primary reasons. First, because Plaintiffs' requested relief would effectively require this

---

representative as the appropriate party to bring this suit. *See* Fed. R. Civ. P. 17. Undersigned counsel attempted to confer with Plaintiffs' counsel regarding this defect by email, but Plaintiffs' counsel did not respond. Further, Plaintiffs filed their amended complaint out of time. *See* [Doc. 63].

Court to interfere in ongoing state court criminal proceedings, their claims are precluded under the *Younger* abstention doctrine. Second, Defendants are entitled to qualified immunity both because Plaintiffs fail to plausibly allege a violation of their constitutional rights, and because the alleged constitutional rights at issue are not clearly established by Supreme Court or Tenth Circuit caselaw.

## BACKGROUND FACTS

### A. Under Colorado law, the state court's order, not the initial determination made by the Public Defender's Office, is the final and appealable decision.

Colo. Rev. Stat. § 21-1-103(3) provides that "[t]he state public defender shall make the determination of indigency, subject to review by the court." As the Colorado Supreme Court recently reaffirmed, this statute gives the state court "the ultimate responsibility for making indigency determinations." *People v. Greer*, 502 P.3d 1012, 1017 (Colo. 2022). In determining indigency, the state court must consider the criminal defendant's complete financial situation by balancing assets against liabilities and income against basic living expenses. *Nikander v. Dist. Court*, 711 P.2d 1260, 1262 (Colo. 1986).

### B. Plaintiffs applied for court-appointed counsel, and the state criminal court determined they were not indigent.

Plaintiffs were separately charged with felonies in Larimer County District Court Case Nos. 2020CR1727 (Sara Brubaker) and 2020CR1733 (Dale Brubaker). [Doc. 64, ¶¶ 11, 16]. In February and April 2021, Plaintiffs submitted applications

for court-appointment counsel. *See generally* [Doc. 13-2]. Plaintiffs' applications for court-appointed counsel reflected that, despite low annual incomes, they held over $440,000 in assets. *Id.*

On April 23, 2021, deputy state public defender Eric Vanatta filed a notice in Plaintiffs' criminal cases that the Public Defender's Office made an initial determination that Plaintiffs did not qualify for court-appointed counsel. [Doc. 64, ¶ 20]; **Ex. A**. Plaintiffs allege Defendants acted "through" Mr. Vanatta. [Doc. 64, ¶ 20]. On April 29, 2021, the state criminal court held a hearing on Plaintiffs' applications for counsel. [*Id.*, ¶ 21]; **Ex. B**. Plaintiffs allege Ms. Hay was "aware" of Mr. Vanatta's position at that hearing. [*Id.*].

On May 3, 2021, the state criminal court entered an order interpreting the public defender's initial determination "as a request for an exception to the eligibility determination," and "affirmed Defendants' determination that Plaintiffs did not qualify for appointed counsel." [*Id.*, ¶ 22]; *see* **Ex. C**. Consistent with its "ultimate responsibility for making indigency determinations" under Colorado law, *see Greer*, 502 P.3d at 1017, the state criminal court specifically found that Plaintiffs "have no debts and over $440,000 in assets which could pay for competent counsel." **Ex. C** at 6. Thus, the Court concluded, "based on a totality of the circumstances, the [Plaintiffs] are not indigent such that the Court may appoint the public defender and alternative defense counsel to represent them." [*Id.* at 5].

Plaintiffs, through counsel, then sought extraordinary relief with the Colorado Supreme Court under Colo. R. App. P. 21, **Ex. D**, but the supreme court denied Plaintiffs' petitions for relief "immediately upon filing." [Doc. 64, ¶ 23].

### C.   Plaintiffs' counsel alleges they sought an additional determination of indigency for the Brubakers while this case was pending.

Almost a year after filing their first complaint in this matter, on August 16, 2022, Plaintiffs' counsel alleges they submitted renewed applications on Plaintiffs' behalf for public defender representation due to "significantly changed financial and legal circumstances." [Doc. 64, ¶ 35]. Plaintiffs allege Defendants "refused to make an initial indigency determination" and "directed Plaintiffs' counsel . . . to submit the applications directly to the court." [Doc. 64, ¶ 35]. Plaintiffs filed applications with the state criminal court on October 7, 2022, pursuant to court order. **Ex. E**. Plaintiffs had been referred by the state court for a competency evaluation several weeks before. **Ex. F**. The state court criminal dockets reflect that Plaintiffs continue to undergo competency evaluations. **Ex. G**.

### D.   Plaintiffs moved for a preliminary injunction in federal court to obtain court-appointed counsel in state court.

Plaintiffs filed this lawsuit on October 5, 2021. [Doc. 1]. Shortly after that, Plaintiffs moved for a preliminary injunction to require Defendants to appoint counsel for Plaintiffs in their criminal cases. [Doc. 12]. This Court held an evidentiary hearing on the motion on November 19, 2021. [Docs. 26, 37]. After

accepting further briefing on the application of the *Younger* abstention doctrine, this Court denied Plaintiffs' motion. [Doc. 30].

### E. Over Seventeen months later, Plaintiffs now amend their complaint to seek damages for a narrow window of time.

The crux of Plaintiffs' theory is that, regardless of the state District Court's ultimate determination that Plaintiffs did not qualify for court-appointed counsel, Plaintiffs nevertheless now allege sustained damages because "Defendants refused to comply with both the statewide standards [§ 21-1-103(3) and CJD 04-04] and their agency's own internal standards." *See* [Doc. 64, ¶¶ 25, 26, 33]. As this Court described at a hearing on August 8, 2022, the "very limited question of what remains in this case" is the question of "damages . . . incurred between the time the public defender makes their decision and the time that the District Court makes its decision"—in other words, between when Plaintiffs filed their applications in February (or April) of 2021, and the state criminal court's decision on May 3, 2021. [Doc. 58 at 46]. Plaintiffs allege a similar harm in their more recent set of applications, submitted August 16, 2022. *See* [Doc. 64, ¶¶ 35, 36].

## LEGAL STANDARDS

### A. Motion to dismiss under Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1), including a motion raising the *Younger* abstention doctrine, challenges a court's subject matter jurisdiction. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). Under a

Rule 12(b)(1) challenge, the court may consider matters outside the pleadings that challenge the allegations upon which the court's jurisdiction depends. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

### B.      Motion to dismiss under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A plaintiff must 'nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). This Court need not accept conclusory allegations as true: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion, this Court may take judicial notice of "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand'" without converting the motion to one under Fed. R. Civ. P. 56. *Hodgson v. Farmington City*, 675 F. App'x 838, 841 ((10th Cir. 2017) (unpublished) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)); *see also Watkins v. Douglas Cnty.*, No. 20-cv-1172-RM-MEH, 2020

WL 8408482, at *7 (D. Colo. Sept. 15, 2020) (court may consider transcript of proceeding where plaintiff identified proceeding, cited judge's findings, and stated judge's conclusions). Similarly, on a motion to dismiss, a court may consider documents referred to in the complaint and central to a plaintiff's claim. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

## ARGUMENT

### I.    *Younger* abstention requires dismissal of Plaintiffs' claims.

*Younger v. Harris*, 401 U.S. 37 (1971), prohibits federal courts from interfering in ongoing state court proceedings. "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). And "the *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L.*, 392 F.3d at 1228; *see also Weitzel v. Dep't of Com. of State of Utah*, 240 F.3d 871, 874–75, 877–78 (10th Cir. 2001) (affirming dismissal of damages claim under *Younger* doctrine).

Abstention is warranted when (1) there are ongoing state court proceedings; (2) the state court is an adequate forum to hear Plaintiffs' federal claims; and (3) the

state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997). This case meets all three *Younger* factors.

### A.  Plaintiffs' criminal cases are ongoing.

First, Plaintiffs themselves allege, and their respective court dockets reflect, that their criminal cases are ongoing. [Doc. 64 ¶¶ 4, 5, 11]; **Ex. G**. Thus, this case meets the first *Younger* factor.

### B.  The state court is an adequate forum to hear Plaintiffs' federal claims.

Second, the state court is an adequate forum to hear Plaintiffs' claims on their alleged entitlement to court-appointed counsel under the Sixth Amendment. *Goings v. Sumner Cnty. Dist. Attorney's Office*, 571 F. App'x 634, 638 (10th Cir. 2014) ("[I]t is beyond cavil that a state court is an adequate forum for the resolution of challenges to distinctly state prosecutorial or court procedures or processes. . . ."); *see Greer*, 502 P.3d at 1017 (explaining Colorado's system for appointment of public defenders and reaffirming that state court "has the ultimate responsibility for making indigency determinations"). Indeed, the state criminal court held a hearing on Plaintiffs' 2021 applications, **Ex. B**, and Plaintiffs sought relief from the state criminal court's order by filing a Colo. R. App. P. 21 petition with the Colorado Supreme Court, **Ex. D**. Thus, this case meets the second *Younger* factor.

**C.    The state proceedings involve important state interests traditionally decided under Colorado law.**

Third, Plaintiffs' claims implicate two important state interests. First, the State of Colorado has an important interest in prosecuting criminal matters. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006) (highlighting states' "strong interest" in enforcing criminal laws and other statutes); *Goings*, 571 F. App'x at 638–39. Second, the State of Colorado has promulgated various statutes and directives governing appointment of court-appointed counsel in state courts. *See Greer*, 502 P.3d at 1017 (citing Colo. Rev. Stat. §§ 18-1-403 and 21-1-103). Accordingly, this case meets the third *Younger* factor.

**D.    Abstention is warranted even though Plaintiffs seek damages.**

The Tenth Circuit has repeatedly affirmed dismissals without prejudice of claims for damages under *Younger*. *See Weitzel*, 240 F.3d at 874–75, 877–78; *Goings*, 571 F. App'x at 640. The Tenth Circuit has also approved staying proceedings on the federal damages claim until state proceedings are final. *D.L.*, 392 F.3d at 1228. Here, awarding Plaintiffs damages in response to the public defender's position that Plaintiffs do not qualify as indigent would amount to second-guessing the state criminal court, which specifically construed the public defender's position as an "exception to the eligibility determination." **Ex. C** at 2. Put simply, through counsel Plaintiffs could and did seek review of the public defender's initial determination by the District Court. To decide otherwise, and to award

Plaintiffs damages, would undermine the ongoing criminal prosecution, thereby creating "preclusive effects on a pending state-court proceeding." *D.L.*, 392 F.3d at 1228. Thus, this Court should abstain under *Younger*.

## II. Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an immunity from *suit*, rather than a mere defense to liability. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

This Court uses a two-part test to analyze whether a plaintiff has overcome a defendant's qualified immunity defense: (1) whether the alleged facts make out a violation of constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). This Court has discretion to address either prong first. *Id.* A plaintiff must satisfy both prongs of the inquiry to overcome qualified immunity. *Herrera v.*

*City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). Once qualified immunity

is asserted, the burden shifts to the plaintiff to show that qualified immunity is

inappropriate. *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).

Ms. Ring and Ms. Hay are entitled to qualified immunity under both prongs

because (1) Plaintiffs cannot show Defendants violated their constitutional rights;

and (2) Plaintiffs cannot show any such rights were clearly established.

**A.    Defendants did not violate Plaintiffs' constitutional rights.**

The Complaint alleges Defendants (1) denied Plaintiffs equal protection of

the law; (2) denied Plaintiffs due process under the Fourteenth Amendment; (3)

denied Plaintiffs their right to counsel under the Sixth Amendment; and (4)

conspired to deprive Plaintiffs of their constitutional rights. These allegations fail to

plausibly state that Defendants violated Plaintiffs' constitutional rights.

**1.    Defendants did not violate Plaintiffs' right to equal protection.**

The Fourteenth Amendment's Equal Protection Clause provides that no State

shall "deny to any person within its jurisdiction the equal protection of the laws."

*A.N. by and through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (quoting

U.S. Const. amend. XIV, § 1). This "is essentially a direction that all persons

similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living

Ctr.*, 473 U.S. 432, 439 (1985). "[T]o assert a viable equal protection claim, plaintiffs

must first make a threshold showing that they were treated differently from others

who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011). One "who alleges [such] an equal protection violation has the burden of proving the existence of purposeful discrimination" causing an adverse effect. *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021).

Here, Plaintiffs' equal protection claim must be dismissed because Plaintiffs fail to plausibly allege that they were treated differently than others similarly situated to them. The Complaint contains only the conclusory allegation that "Plaintiffs were and are similarly-situated in all relevant aspects to other criminal defendants who apply for the appointment of counsel. . . ." [Doc. 64, ¶ 40]. But the Complaint fails to identify any other "similarly situated" criminal defendants who were deemed qualified for court-appointed counsel.

Because Plaintiffs have failed to make a threshold showing, their equal protection claim must be dismissed. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) (holding that "conclusory allegations simply do not state a cause of action for which relief can be granted under an equal protection theory"); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1323 (10th Cir. 2010) (holding that vague and conclusory allegations, without any specific facts regarding differential treatment, are insufficient to support equal protection claim).

## 2.     Defendants did not violate Plaintiff's due process rights.

"[T]he due process clause is not a guarantee against incorrect or ill-advised [government] decisions." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006) (internal punctuation omitted). "Violations of state law do not necessarily support valid substantive due process claims." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x 887, 898 (10th Cir. 2010). Instead, to state a plausible claim for a violation of their due process rights, Plaintiffs "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Camuglia*, 448 F.3d at 1222 (internal quotation marks omitted). As the Tenth Circuit has explained:

> The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges. It is well settled that negligence is not sufficient to shock the conscience. In addition, *a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power*.

*Id.* (emphasis added). "These limits reflect the need to restrict the scope of substantive due process claims, the concern that § 1983 not replace state tort law, and the need to give deference to local policymaking bodies' decisions relating to public safety." *Rocky Mountain Rogues*, 337 F. App'x at 898.

Here, Plaintiffs fail to meet the extraordinarily high threshold necessary to plausibly allege a violation of their due process rights. At worst, Plaintiffs allege

that Defendants departed from standards set by state law in making the initial determination as to whether the Defendants were eligible for court-appointed counsel. [Doc. 64, ¶ 26]. Even if true, this alleged failure to follow CJD 04-04 or the Public Defender's internal guidelines step-by-step does not amount to a constitutional violation. *Rocky Mountain Rogues*, 337 F. App'x at 898.

*Rocky Mountain Rogues* is instructive. That case involved allegations that, among other things, a fire marshal illegally issued a cease-and-desist order to shut down a restaurant's operations due to a purportedly inadequate sprinkler system. *Id.* at 890. A state court later found the fire marshal did not have statutory authority to issue the order. *Id.* The restaurant argued the fire marshal's order violated its due process rights under § 1983. *Id.* at 898. Indeed, "[i]n asserting its substantive due process claim, the [restaurant] emphasize[d] the state court's reversal of the cease and desist order." *Id.* But the Tenth Circuit rejected the restaurant's argument, reasoning the restaurant could not prevail on its § 1983 claim because it could not show the marshal's "conduct was conscience shocking, arbitrary in the extreme, or highly outrageous." *Id.* Rather, the marshal "acted in a methodical and reasonable, albeit unauthorized, manner." *Id.* Thus, the Tenth Circuit affirmed dismissal of the restaurant's § 1983 claim.

This case presents an easier question than *Rocky Mountain Rogues* because here, the state District Court entered an "Order Denying Request for Court

Appointed Counsel." **Ex. C**. Even if the public defender's office acted in a manner that departed from the procedure set forth in CJD 04-04, the state District Court construed the public defender's initial determination as a request for an exception under CJD 04-04. Thus, Defendants' alleged conduct in 2021 was not "conscience shocking, arbitrary in the extreme, or highly outrageous." Furthermore, no statute, rule, or directive requires the public defender to make a *second* indigency determination once the state criminal court has already decided a plaintiff is not indigent. Thus, Defendants' alleged conduct in directing Plaintiffs to file their renewed applications with the state criminal court in August 2022 was similarly not "conscience shocking, arbitrary in the extreme, or highly outrageous." For these reasons, Plaintiffs fail to plausibly allege a violation of their due process rights.

### 3. Defendants did not violate Plaintiffs' Sixth Amendment rights.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense." *Packard v. Goodrich*, No. 17-cv-835-RBJ, 2017 WL 3839457, at *4 (D. Colo. Sept. 1, 2017) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). "Of course, a defendant who is not indigent does not have a constitutional right to appointment of counsel at state expense." *Pruitt v. Hartley*,

No. CIVA 07-CV-1480-WYD, 2008 WL 4371925, at *3 (D. Colo. Sept. 22, 2008)

(citing *United States v. Kahan*, 415 U.S. 239, 243 (1974)).

Here, Defendants could not have violated Plaintiffs' Sixth Amendment rights because, as ultimately determined by the state criminal court, Plaintiffs were not indigent and thus did not qualify for court-appointed counsel. **Ex. C**. And to decide otherwise would require second-guessing the state criminal court's May 3, 2021 determination that Plaintiffs were not indigent—something this Court may not do under *Younger*. Nor could this Court decide that Plaintiffs are *now* indigent, as such a decision would effectively substitute this Court's judgment for the state criminal court's existing indigency determination. In any event, because § 21-1-103(3) subjects any application for court-appointed counsel to "review by the court," Defendants could not have violated Plaintiffs' Sixth Amendment rights by referring their applications to the same entity—the state criminal court—that is ultimately responsible for appointing counsel. (Plaintiffs' criminal court dockets reflect that they did, in fact, submit these applications to the state criminal court. **Exs. E, G**.) Thus, Plaintiffs fail to plausibly allege a violation of their Sixth Amendment rights.

### 4.    Defendants are not liable for conspiracy under § 1983.

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton*, 898 F.2d

1443, 1449 (10th Cir. 1990). As argued above, Plaintiffs fail to plausibly allege that any of Defendants' actions resulted in a deprivation of constitutional rights. Accordingly, Defendants cannot be liable under a § 1983 conspiracy theory.

### B.   Plaintiffs cannot show they had a "clearly established" Sixth or Fourteenth Amendment right that Defendants violated.

For a right to be "clearly established," the legal principle at issue must exist as a matter of "settled law," meaning that it is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). While there does not have to be a case directly on point for a right to be "clearly established," existing precedent must place the statutory or constitutional question "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551–52 (2017). The precedent must be sufficiently clear that "every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply." *Wesby*, 138 S. Ct. at 590. Accordingly, clearly established law must be very close to the act alleged in the complaint and cannot defined at a "high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). This is because "general statements of the law are not inherently incapable of giving fair and clear warning to officers" that their actions are unlawful. *Id.* at 1153 (quoting *White*, 137 S. Ct. at 552).

Here, even if this Court determines that Plaintiffs plausibly alleged Defendants' conduct violated their constitutional rights, Plaintiffs cannot show that

such any such rights were "clearly established" by the Supreme Court or the Tenth Circuit at the time of the alleged violation.

Plaintiffs' damages theory is exceedingly narrow. Because the state criminal court necessarily conducts an independent review of a criminal defendant's eligibility for appointment of a public defender, *see* § 21-1-103(3), Plaintiffs' damages (if any) attributable to Defendants must stem from Defendants' conduct in making an initial determination of eligibility for court-appointed counsel. [Doc. 58 at 6]. Further, these damages are cut off upon the state criminal court's review. [*Id.*] Thus, to overcome Defendants' qualified immunity, Plaintiffs must identify a Supreme Court or Tenth Circuit case showing the precise constitutional rights they allege were violated here are "beyond debate." *White*, 137 S. Ct. at 551–52.

No such case exists. There is no authority in the Supreme Court or Tenth Circuit establishing "beyond debate" that criminal defendants have a constitutional right to a particular method of determining their indigency (e.g., the method set forth in CJD 04-04), such that a failure to follow this method amounts to a constitutional violation. *See id*. Neither the Supreme Court nor the Tenth Circuit has even interpreted CJD 04-04, let alone concluded that a public defender's use of a procedure that departs from a strict reading of CJD 04-04 creates a harm of

constitutional magnitude.[2] The scant caselaw in other jurisdictions confirms that there is no clearly established right to particular public defender procedures regarding applications for representation *See, e.g., Stoneroad v. Johnson*, No. 18-cv-2276, 2020 WL 7250324, at *5–6 (M.D. Pa. Nov. 9, 2020) (holding that public defender was entitled to qualified immunity in lawsuit by disabled plaintiff alleging public defender violated his Sixth Amendment rights by requiring him to submit in-person application, and noting that the court "has not found any cases with facts materially similar to the facts in this case" for purposes of qualified immunity analysis). Therefore, because Plaintiffs cannot present a case to "establish the particular rule the plaintiff[s] seeks to apply," Defendants are entitled to qualified immunity. *Wesby*, 138 S. Ct. at 590.

Accordingly, Plaintiffs cannot meet the second prong of the qualified immunity test, and this Court must dismiss the § 1983 claims against them.

## CONCLUSION

For these reasons, this Court must dismiss the Second Amended Complaint with prejudice.

---

[2] A Westlaw search for "CJD 04-04" in the Tenth Circuit yields a single result: an unpublished district court habeas decision, *Love v. Clements*, No. 12-cv-2160-LTB, 2014 WL 5092622 (D. Colo. Oct. 9, 2014), which cites CJD 04-04 and other authorities to support the proposition that "once a defendant has been advised of his right to court-appointed counsel, it is the defendant's burden to request such counsel, and to do so by complying with certain requirements of statute and rule."

Respectfully submitted this 3rd day of March, 2023.

PHILIP J. WEISER
Attorney General

*s/Dmitry B. Vilner*
ANDREW M. KATARIKAWE*
Senior Assistant Attorney General
DMITRY B. VILNER*
Assistant Attorney General
Civil Litigation & Employment Law Section

SCOTT SCHULTZ*
Senior Assistant Attorney General
Natural Resources & Environment Section

1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone:  720-508-6000
FAX:  720-508-6032
E-mail:  andrew.katarikawe@coag.gov
  scott.schultz@coag.gov
  dmitry.vilner@coag.gov

*Counsel of Record
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that I served the foregoing DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT upon all parties herein by e-filing and service through the CM/ECF system maintained by the court at Denver, Colorado, on this 3rd day of March 2023.

*s/ Annie Chaivre*